## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SASHA WESTRICK | : | **CIVIL ACTION** |
| 1300 Cecil B. Moore Avenue | | |
| Philadelphia, Pennsylvania 19122 | : | |
| | | |
| vs. | : | |
| | | |
| TEMPLE UNIVERSITY | : | DOCKET NO._____ |
| 1801 North Broad Street | | |
| Philadelphia, Pennsylvania 19122 | : | |
|     and | | |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| The Capitol | | |
| 501 North 3rd Street | | |
| Harrisburg, Pennsylvania 17120 | : | |
|     and | | |
| TEMPLE BOARD OF TRUSTEES | : | |
| 1330 Polett Walk | | |
| Philadelphia, Pennsylvania 19122 | : | |
|     and | | |
| DR. JASON WINGARD | : | |
| 1330 Polett Walk | | |
| Philadelphia, Pennsylvania 19122 | : | |
|     and | | |
| MEGAN M. PATRICK | : | |
| 1755 North 13th Street | | |
| Philadelphia, Pennsylvania 19122 | : | |
|     and | | |
| SANDRA FOEHL | : | |
| 1330 Polett Walk | | |
| Philadelphia, Pennsylvania 19122 | : | |
|     and | | |
| REBECCA GRZYBOWSKY | : | |
| 1801 North Broad Street | | |
| Philadelphia, Pennsylvania 19122 | : | |
|     and | | |
| EDWARD DARRAH | : | |
| 1776 Broad Street | | |
| Philadelphia, Pennsylvania 19122 | : | |
|     and | | |
| TEMPLE UNIVERSITY CAMPUS | : | |
| SAFETY SERVICES | | |
| 1101 West Montgomery Avenue | : | |

Philadelphia, Pennsylvania 19122
   and                              :
EDWARD J. WOLTEMATE
1101 West Montgomery Avenue         :
Philadelphia, Pennsylvania 19122

---

## PRELIMINARY STATEMENT

In the waning days of Summer, 2021, 17-year-old Sasha Westrick was looking forward to beginning her undergraduate education as a Freshman Temple Owl. Rather than the experience of self-discovery and growth she was expecting upon her matriculation at Temple University, her time there became about antisemitism, dishonesty and retaliation. Sasha, who is an observant Jew, was initially being harassed by her roommate, Lucy Brennan. The two were paired because they were both on the university's Crew team. Unfortunately, Brennan immediately took issue with Sasha's religious observances and began to make comments about Palestine, about how Sasha was stupid to believe in God, and what Sasha looked like wearing her ceremonial adornments for Shabbat. Brennan asked her for money, saying it was because all Jews were rich. The harassment finally culminated with a SnapChat message that included the caption "I hate Jews." This discrimination against Sasha proved to be infectious as Brennan recruited others to join her in harassing Sasha, including Sasha's other roommate, Madelyn Fox.

Naturally, Sasha took action right away and requested that Temple immediately change her living situation. While Temple slow-walked the task of finding Sasha new housing, Sasha also addressed the matter with her Crew team coaches. This was a vital step because, besides her academic obligations, Crew was the most time-consuming activity on Sasha's schedule. She fully expected that Lucy Brennan and Madelyn Fox could not remain on the team at the same time they were targeting and threatening one of their teammates. Sasha's coaches saw the situation differently. They demanded that Sasha provide proof of her allegations. They also took

the affirmative step of taking information provided by Sasha in confidence and then providing it to Temple University administrators, presumably so they could prepare their response.

Temple conducted a haphazard investigation that including secret hearings and then they temporarily issued a 71-page report that only Sasha could read within a strictly abbreviated window of time amidst her busy student schedule. Temple took further action by placing in effect No Contact Orders ("NCOs") that worked as mutual restraining orders between Sasha, Ms. Fox and Ms. Brennan, despite their unavoidable proximity and Sasha's status as a victim. All we know is that Temple believes that Sasha's complaint of September 2021 was valid and truthful. Temple offered a written acknowledgment and listed a number of community outreach steps it would pursue to makes sure this didn't happen again in the future. As far as Temple was concerned, that's the end of the story.

Unfortunately, that was not the end of the story for Sasha Westrick. The harassment continued as Sasha made her way around campus. Brennan and Fox would alert campus police whenever Sasha was present, using their NCOs as weapons of retaliation against Sasha.  Temple University police were called more than once as Brennan and Fox continued to target Sasha. Given the absence of any punitive action taken in response to the discriminatory conduct, and with Temple's NCOs as their instrument, it is easy to understand why Brennan and Fox persisted.

Sasha has now been forced to explore numerous unforeseen options, and none of them are good. She is attempting to fulfil her academic obligations, while also researching the possibility of applying to a different school, or simply putting her education on hold. Sasha now sees a psychotherapist and suffers from symptoms of PTSD related to the event. The change between what she expected from Temple and what she ended up getting from Temple was so fast

and so extreme that it has taken its toll on Sasha. Her academic record has suffered and she has been unable to maintain her place on the Crew team. More importantly, she has been subject to fear, intimidation, derision, and hatred, with the ongoing tacit and explicit approval of Temple, and even carried out by the University itself.

Under its current regime, Temple's staff, including high-level administrators, ignored Sasha's pleas for help. Each representative within the departments was notified by Sasha in accordance with Temple's own policies including both the Student and Faculty Handbooks; however, each of Sasha's confidantes shrugged-off her concerns. Distressingly, the same Temple faculty that paused before helping Sasha took no such hesitation when responding to  Brennan and Fox's demands. Despite Temple's policies and mission statements that strongly disparage discrimination, each department that was notified of Brennan's clearly discriminatory conduct defended it to the point of exacerbating the situation. Sasha is not before this Court because she was bullied for being Jewish, instead Sasha is before this Court because Temple University helped bully Sasha for being Jewish.

## **PARTIES**

1.      Plaintiff Sasha Westrick is an adult individual who, at all relevant times resided at 1300 Cecil B. Moore Avenue, Philadelphia, Pennsylvania 19122.

2.      Defendant Commonwealth of Pennsylvania is located within the United States of America and maintains its principal place of business at the Capitol, 501 North 3rd Street Harrisburg, Pennsylvania 17120.

3.      Defendant Temple University is a State-related university within Philadelphia County and maintains a principal place of business at 1801 N. Broad Street, Philadelphia, Pennsylvania 19122.  Defendant Commonwealth of Pennsylvania recognizes Defendant Temple

University as a State-related university and therefore Temple University is an instrumentality of the Commonwealth. *See* 24 P.S. Education § 2510-2.

4.     Defendant Temple University Board of Trustees is an entity organized and existing by virtue of bylaws enacted by Defendants Temple University and Commonwealth of Pennsylvania and maintains a principal place of business at 1330 Polett Walk, Philadelphia, Pennsylvania 19122.

5.     Defendant Dr. Jason Wingard is an adult individual who, at all relevant times, was the President of Defendant Temple University and maintained a principal place of business at 1330 Polett Walk, Philadelphia, Pennsylvania 19122. Defendant Wingard is being sued both individually and in his capacity as an officer, agent, servant, workman and/or employee of Defendants Commonwealth of Pennsylvania, Board of Trustees and Temple University.

6.     Defendant Megan M. Patrick is an adult individual who, at all relevant times, was the Assistant Dean of Students of Defendant Temple University's department of Student Conduct and Community Standards (hereinafter "SCCS") and maintained a principal place of business at 1755 N. 13th Street, 318 N. Student Center, Philadelphia, Pennsylvania 19122. Defendant Patrick is being sued both individually and in her capacity as an officer, agent, servant, workman and/or employee of Defendants Temple University and Commonwealth of Pennsylvania.

7.     Defendant Sandra Foehl is an adult individual who, at all relevant times, was the Director of Office of Diversity, Equity, and Inclusion (hereinafter "EOC") and maintained a principal place of business at 1330 Polett Walk, Philadelphia, Pennsylvania 19122. Defendant Foehl is being sued both individually and in her capacity as an officer, agent, servant, workman and/or employee of Defendants Temple University and Commonwealth of Pennsylvania.

8.     Defendant Rebecca Grzybowsky is an adult individual who, at all relevant times, was the Women's Rowing Head Coach and maintained a principal place of business at 1801 N. Broad Street, Philadelphia, Pennsylvania 19122. Defendant Grzybowsky is being sued both individually and in her capacity as an officer, agent, servant, workman and/or employee of Defendants Temple University and Commonwealth of Pennsylvania.

9.     Defendant Edward Darrah is an adult individual who, at all relevant times, was the Temple Athletic Department's Psychotherapist and maintained a principal place of business at 1776 Broad Street, Philadelphia, Pennsylvania 19121. Defendant Edward Darrah is being sued both individually and in his capacity as an officer, agent, workmen and/or employee of Defendants Temple University and Commonwealth of Pennsylvania.

10.    Defendant Temple University Campus Safety Services (hereinafter "Campus Safety) is a public entity organized and existing by virtue of the law of the State of Pennsylvania and maintains a principal place of business at 1101 W. Montgomery Avenue, Philadelphia, Pennsylvania 19122.

11.    Defendant Edward J. Woltemate is an adult individual who, at all relevant times, was the Captain of the Investigations Unit for Defendant Temple University Campus Safety Services and maintained a principal place of business at 1101 W. Montgomery Avenue, Philadelphia, Pennsylvania 19122. Defendant Woltemate is being sued both individually and in his capacity as an officer, agent, workmen and/or employee of Defendants Temple University, Campus Safety and Commonwealth of Pennsylvania.

**JURISDICTION**

12.     The United States District Court for the Eastern District of Pennsylvania has

jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). The Court exercises

supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**VENUE**

13.     Pursuant to 28 U.S.C. Section 1391(b), the venue of this suit is proper in the

Eastern District of Pennsylvania, as that is the location of the Defendants and the place where the

events giving rise to this litigation occurred.

**OPERATIVE FACTS**

14.     At all times material hereto, Defendant Dr. Jason Wingard acted and/or failed to

act within the course and scope of his employment, under color of state law, pursuant to the

customs, policies and practices of Defendants Commonwealth of Pennsylvania, Temple

University and Board of Trustees. *See* Exhibit A[1].

15.     At all times material hereto, Defendant Megan M. Patrick acted and/or failed to

act within the course and scope of her employment, under color of state law, pursuant to the

customs, policies and practices of Defendants Commonwealth of Pennsylvania, Temple

University and Board of Trustees. *See* Exhibit B[2].

16.     At all times material hereto, Defendant Sandra Foehl acted and/or failed to act

within the course and scope of her employment, under color of state law, pursuant to the

customs, policies and practices of Defendants Commonwealth of Pennsylvania, Temple

University and Board of Trustees.

---

[1] Temple University Policies and Procedures Manual: "Preventing and Addressing Discrimination and Harassment,"
(Sept. 2020).
[2] Temple University Ethics and Compliance Office Charter, (Dec. 21, 2021).

17.     At all times material hereto, Defendant Rebecca Grzybowsky acted and/or failed to act within the course and scope of her employment, under color of state law, pursuant to the customs, policies and practices of Defendants Commonwealth of Pennsylvania, Temple University and Board of Trustees.

18.     At all times material hereto, Defendant Edward Darrah acted and/or failed to act within the course and scope of his employment, under color of state law, pursuant to the customs, policies and practices of Defendants Commonwealth of Pennsylvania, Temple University and Board of Trustees.

19.     At all times material hereto, Defendant Edward J. Woltemate acted and/or failed to act within the course and scope of his employment, under color of state law, pursuant to the customs, policies and practices of Defendants Commonwealth of Pennsylvania, Temple University, Campus Safety and Board of Trustees.

20.     At all times material hereto, All Defendants acted and/or failed to act by and through their agents, servants, workmen and/or employees acting within the course and scope of their employment, under color of state law, and pursuant to the customs, policies and practices of Defendants Temple University, Board of Trustees, Campus Safety and/or Commonwealth of Pennsylvania.

21.     At all relevant times hereto, Defendants Temple University, Board of Trustees, Campus Safety and Commonwealth of Pennsylvania were charged with the responsibility of testing, hiring, training and/or supervising all agents, servants, workmen and/or employees, including without limitation Defendants Dr. Jason Wingard, Megan M. Patrick, Sandra Foehl, Rebecca Grzybowsky, Edward Darrah, and Captain Edward J. Woltemate.

22.     On or about Aug. 17, 2021, Plaintiff Sasha Westrick (hereinafter "Sasha") arrived on Defendant Temple University's campus for her freshman year of undergraduate education.

21.     Before Sept. 16, 2021, Sasha was informed by her head Crew coach, Defendant Rebecca Grzybowsky (hereinafter "Grzybowsky"), to keep an eye on Sasha's roommate and teammate, Lucy Brennan (hereinafter "Brennan"), due to Brennan's bouts of depression and multiple suicide attempts. Defendant Grzybowsky was Sasha's only source for Brennan's medical information disclosed to her.

22.     One night, before Sept. 16, 2021, Sasha was dressed conservatively to go to dinner when Brennan asked her where she was going. Sasha said she was going to Synagogue. Brennan became irate and berated her for being religious and then continued to harass Sasha for her Judaism on a regular basis. Sasha avoided confrontation and ignored Brennan's insults because of Defendant Grzybowsky's earlier warnings about Brennan.

23.     On or about Sept. 16, 2021, Brennan texted to Sasha a secretly taken photo of Sasha containing the caption, "I hate Jews." Sasha responded to this hateful conduct by finally saying something, alerting Defendants Grzybowsky and the athletic department's psychotherapist, Edward Darrah (hereinafter "Darrah"). In light of Brennan's hateful and threatening conduct, Sasha requested a room change to escape Brennan's ongoing antisemitic harassment.

24.     Defendant Darrah's astonishing recommendation to Sasha's request was to put-up a "_**blanket divider**_" in the room between Sasha and Brennan instead of transferring Sasha to a different dormitory. Around the time that Sasha told Defendants Darrah and Grzybowsky about what happened, Sasha's other roommate, Madelyn Fox, quickly took Brennan's side. Aside from telling Sasha to create a wall of blankets in her room, Defendant Darrah's other attempt to help

9

resolve Sasha's ungodly predicament was to induce Sasha to sign a Record Release allowing him to share Sasha's confidential information with Defendant Grzybowsky.

      25.    On or about Sept. 30, 2021, Sasha's mother, Amy Westrick (hereinafter "Amy"), visited Sasha on campus for the first time and quickly noticed that Sasha was suffering from severe emotional distress. Sasha was in fear of retaliation and reluctant to make any further reports because her prior pleas fell on deaf ears.

      26.    On or about Oct. 3, 2021, Amy, as a reasonably concerned mother, emailed Defendant Grzybowsky directly:

> Hi Rebecca,
>
>      I really have hesitated in writing this since I know Sasha will be very upset with me but I can no longer bite my tongue.
>
>      . . .
>
>      As I was leaving Sasha she said she didn't want to go back to her apartment and I told her that her apartment should be her sanctuary not someplace where she dreads returning. I really feel like this is taking too great of a toll on her and she's trying to put on a good face but it's eating her up!! Please help.
>
>      Thank you,
>      -Amy Westrick.

Oct. 3, 2021 Email between Amy and Defendant Grzybowsky.

      27.    On or about Oct. 4, 2021, Defendant Grzybowsky attended a meeting with Sasha that resulted in no action taken to remedy Sasha's situation.

      28.    On or about Oct. 9, 2021 (now at least Twenty-Three days after the "I hate Jews" post), Amy contacted the Residential Director (Charlie Lafe) and demanded that Sasha finally be transferred to a different room. Only after this request by Sasha's mother did Defendant Temple University's faculty respond to the situation and place Sasha in a temporary emergency dorm

room. Tragically, Sasha was soon placed in a permanent dorm room that was not only still in the same building, but ***on the same floor*** as Brennan and Fox.[3]

29.     On or about Oct. 9, 2021, the Director of EOC, Defendant Sandra Foehl (hereinafter "Foehl"), was, for the first time, alerted about the pattern of antisemitic behavior. This notification came not from the various Temple staff from whom Sasha had sought help, but from Sasha's mother Amy.

30.     On or about Oct. 11, 2021, Defendant Foehl was contacted by Amy to confirm that Foehl received the Oct. 9 email regarding the hate text sent to Sasha. Defendant Foehl stated that the incident would be investigated. This is the first time Sasha was informed by the EOC that a clearly bias incident would be investigated. This was no more than Twenty-Five days after the "I hate Jews" post.

31.     On or about Oct. 20, 2021, at the request of Brennan, SCCS's Assistant Dean of Students, Defendant Megan M. Patrick (hereinafter "Patrick"), placed in effect a No Contact Order (hereinafter "NCO") that mutually prohibited intentional contact between Sasha, Fox and Brennan. The NCO was filed despite inevitable and unavoidable violations since these individuals were all on the same Crew Team and living on the same floor of a shared dormitory. Initially, Defendant Patrick did not even notify Sasha of the NCO, and ***never*** advised her of her right to challenge the NCO for good cause shown. *See* Exhibits C and D[4].

32.     Sasha became aware of the NCO, on or about Oct. 21, 2021, when she returned to her old dorm to get her remaining possessions. Rather than allowing Sasha to recover her own personal property, Brennan and Fox retaliated by alerting Defendant Campus Safety that Sasha was in their presence.

---

[3] Temple University undergraduate housing consists of at least eight (8) separate residence halls.
[4] Oct. 20, 2021, "No Contact Orders."

33.     On or about Oct. 21, 2021, in response to Fox and Brennan's retaliation, and knowing that she could expect Defendant Temple University to only make the situation worse, Sasha went directly  to Campus Safety, herself. As a result of Sasha's police report, Brennan was found by Campus Safety to have likely committed a hate crime. Exhibit E[5]. All known records of Defendant Campus Safety's findings were forwarded to the office of Student Conduct and Community Standards (hereinafter "SCCS").

34.     On or about Dec. 1, 2021, Defendant Grzybowsky organized the Crew team into groups that would practice together. Inexplicably and in direct conflict with the Defendant Temple's NCO, Defendant Grzybowsky placed Sasha and Fox ***in the same group***. As a result and in an effort to fulfill her own obligations under Defendant Temple's policies, Sasha alerted Defendant Megan Patrick about the situation.

35.     On or about Dec. 17, 2021, Sasha was notified by SCCS about Brennan's student conduct hearing to determine a potential disciplinary action against Brennan for the antisemitic harassment. As the complainant, Sasha's presence was required at the hearing. She was also informed that no one else was permitted to attend on her behalf or to provide support. This is in stark contrast to the fact that Ms. Brennan was permitted to bring several witnesses, including but not limited to Ms. Fox, Ms. Brennan's mother and Ms. Brennan's boyfriend.

36.     On or about Dec. 20, 2021, Sasha was notified that the SCCS determined Brennan was guilty of sending the hateful text message but nothing more. Sasha was also informed that mandatory attendance in a pro-diversity program was the extent of the interim measures taken against Brennan.

37.     Since the SCCS hearing, Sasha has been forced to quit the rowing team.

---

[5]Temple Police Dept. Incident Report (Oct. 21, 2021).

38.     On or about Jan. 3, 2022, an anonymous member of the rowing team posted a summary of what happened to Sasha on Instagram. The post received over 1,000 shares/views before being taken down the next day for unknown reasons. *See* Exhibit F[6].

39.     On or about Jan. 5, 2022, Defendant Grzybowsky held a team meeting (absent Sasha) stating that the above-mentioned Instagram post was "90% false," despite Brennan being found guilty of what the post reflected.

40.     On or about Jan. 24, 2022, Fox was notified that she was being investigated for her role in discriminating against Sasha for being Jewish. In response, Fox went to Campus Safety where she filed a formal complaint alleging that Sasha was harassing Fox by purposefully violating the NCO and voluntarily placing herself in Fox and Brennan's presence within common areas of the University's campus including groups on the Crew team. Exhibit G[7].

41.     On or about Jan. 28, 2022, Brennan and Fox again notified Campus Safety that Sasha was voluntarily in their presence and Campus Safety responded by dispatching four officers who then ***surrounded and menaced*** Sasha in the hallway of her dormitory in front of other friends and students.

42.     On or about Feb. 1, 2022, Sasha's mother spoke with Defendant Patrick regarding the January 28 Campus Safety incident described in the previous paragraph. Defendant Patrick stated that the investigation against Fox was coincidentally completed on the exact same day that Amy Westrick was calling. Defendant Patrick would not comment on whether she thought it was a good idea to place mutual NCOs in effect for parties that appear to be using said NCOs to retaliate against Sasha.

---

[6] Jan. 3, 2022, Since Deleted Instagram Post.
[7] Temple Police Dept. Incident Report (Jan. 24, 2022).

43.     On or about Feb. 4, 2022, Amy Westrick contacted the Captain of Campus Safety, Defendant Edward J. Woltemate (hereinafter "Woltemate"), to inquire about why officers were dispatched to essentially arrest Sasha. Defendant Woltemate brushed-off the incident as simply an ongoing problem between roommates, despite Campus Safety's previous record of the hate crimes that were committed against Sasha.

**COUNT I**
**CIVIL RIGHTS: TITLE VI**
**(Federally Funded 42 U.S.C. § 2000d)**
**Plaintiff Sasha Westrick vs. All Defendants**

44.     All previous paragraphs are hereby incorporated by reference as though fully set forth herein.

45.     The Defendants' conduct as set forth above, acting under color of state law, encouraged and/or resulted in religious discrimination against Plaintiff Sasha, and was committed in conscious and deliberate disregard of the substantial and/or unjustifiable risk of causing harm to Sasha and members of her protected class.

46.     At all relevant times, Defendants knew or should have known of the discrimination resulting from violating established policies regarding No Contact Orders including but not limited to:

        a.     Placing in effect NCOs without notifying effected parties of their right to challenge for good cause shown;

        b.     Placing in effect NCOs without investigating the reasons why the NCOs were sought;

        c.     Placing in effect NCOs without investigating the culmination of incidents and/or conduct that resulted in said NCOs;

d.     Allowing NCOs to be used as a retaliatory measure against victims of religious discrimination;

e.     Ignoring the retaliatory nature and harm caused by placing in effect NCOs supported by facts depicting bias incidents;

f.     Affirmatively ignoring Sasha's request for a room transfer despite the reasonableness of such a request in light of the discriminatory harassment; and

g.     Affirmatively not granting Sasha's room transfer request despite emergency dormitory availability.

47.     Defendant Temple University's administrators, supervisors, and/or faculty are employed within the university system as an instrumentality of the state receiving the benefits of federally-funded grants and programs.

48.     As a direct and proximate result of the above-described failures, Plaintiff Sasha Westrick was deprived of her rights secured by the Fourteenth Amendment to the Constitution of the United States of America without any compelling state interest.

49.     As a direct and proximate result of the violations of her civil rights, Sasha was caused to suffer harm including but not limited to discrimination, humiliation and embarrassment, severe mental anguish and loss of scholarship opportunities.

WHEREFORE, Plaintiff demands judgment against each Defendant as to each count, individually, jointly, and severally, in a sum in excess of One Hundred and Fifty Thousand Dollars ($150,000), plus punitive damages, interest, costs, attorney's fees, and such other and future relief as the Court may deem just and proper.

**COUNT II**
**CIVIL RIGHTS: *MONELL* CLAIM**
**(4th and 14th Amendment, Substantive Due Process)**
**Plaintiff Sasha Westrick vs. All Defendants**

50.     All previous paragraphs are hereby incorporated by reference as though fully set forth herein.

51.     The Defendants' conduct as set forth above, acting under color of state law, was recklessly, willfully, and deliberately indifferent to the health, safety and well-being of Plaintiff Sasha Westrick, and was committed in conscious and deliberate disregard of the substantial and/or unjustifiable risk of causing harm to Sasha and/or members of her protected class.

52.     At all relevant times, All Defendants acted through high-level, responsible policy makers including without limitation Defendants Grzybowsky, Wingard, Patrick, Foehl, Darrah, Woltemate and/or other individuals who promulgated policies and procedures and/or acquiesced in a longstanding custom or practice whereby such individuals knew of the danger posed by the failures set forth in the following paragraph and deliberately chose not to pursue a different course of action and/or acquiesced in a longstanding practice of such failures.

53.     The Defendants' conduct, as set forth above, pursuant to express policies and/or longstanding customs or practices about which policymakers with authority were explicitly aware, or were of such a longstanding and widespread nature that such individuals should have been aware, violated Sasha's rights pursuant to the Fourteenth Amendment to the United States Constitution, which is remediable through 42 U.S.C. § 1983, by, *inter alia*:

         a.     Failing to properly screen, hire, employ and/or retain faculty members with sufficient skill and/or fitness for duty to serve as athletic and administrative staff and/or supervisors working in the field of state-sponsored education;

    b.  Failing to properly train and/or supervise supervisors, administrators and/or other faculty to properly and safely serve as athletic and administrative staff and/or supervisors in the field of state-sponsored education, including without limitation:

      i.  Failing to train administrators and/or faculty to review and/or investigate any and all social media of students accused of discriminating against constitutionally protected conduct;

      ii.  Failing to adequately and properly supervise administrators and/or faculty to ensure that they investigate any and all social media of students accused of discriminating against constitutionally protected conduct;

      iii.  Failing to adequately and properly supervise administrators and/or faculty to ensure that they properly and adequately report information within their department and to other departments within the university system regarding the student and/or faculty records of individuals accused of and/or aware of discrimination against constitutionally protected conduct;

      iv.  Failing to adequately and properly supervise administrators and/or faculty regarding the appropriate circumstances under which a student conduct investigation may be terminated and when one should be continued in the event that constitutionally protected conduct is targeted; and

      v.  Failing to adequately and properly supervise administrators and/or faculty regarding the appropriate interim measure(s) to apply in circumstances regarding violations of constitutionally protected individual rights.

c.      Failing to properly implement the appropriate policies, practices and/or procedures to address discrimination on Defendant Temple University's campus, including without limitation:

i.      The need to adequately and properly investigate any and all social media as well as student records of those students accused of discriminating against constitutionally protected conduct;

ii.      The appropriate circumstances under which a student conduct investigation may be terminated and when one should be continued in the event that constitutionally protected conduct is targeted; and

iii.      The appropriate interim measure(s) to apply in circumstances regarding violations of constitutionally protected individual rights.

d.      Failing to properly train supervisors, administrators and other faculty to properly and adequately oversee assigned supervisors, administrators and faculty members investigating, evaluating and/or documenting campus discrimination to ensure, among other things, that complete and accurate information is placed in the investigatory and/or accused student's record, that investigations are not terminated prematurely and that information is shared with the appropriate department(s) to permit, *inter alia*, the proper filing of NCOs;

e.      Failing to take appropriate disciplinary action against administrators and other faculty retained to investigate campus discrimination; and

g.      Failing to have proper inter- and intra-department communication and policies to allow for the proper transmission, review and reaction to information about open and closed student conduct investigations.

54.     As a direct and proximate result of the above-described failures, Plaintiff Sasha Westrick was deprived of her rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States of America without any compelling state interest.

55.     As a direct and proximate result of the violations of her civil rights, Sasha was caused to suffer economic and non-economic damages including but not limited to discrimination, humiliation and embarrassment, severe mental anguish and loss of scholarship opportunities.

WHEREFORE, Plaintiff demands judgment against each Defendant as to each count, individually, jointly, and severally, in a sum in excess of One Hundred and Fifty Thousand Dollars ($150,000), plus punitive damages, interest, costs, attorney's fees, and such other and future relief as the Court may deem just and proper.

**COUNT III**
**CIVIL RIGHTS: FOURTH AMENDMENT**
**Plaintiff vs. Defendants Grzybowsky, Darrah, Foehl and Patrick**

56.     All previous paragraphs are hereby incorporated by reference as though fully set forth herein.

57.     The Defendants' conduct as set forth above, acting under color of state law, was recklessly, willfully, and deliberately indifferent to the health, safety and well-being of Plaintiff Sasha Westrick, and was committed in conscious and deliberate disregard of the substantial and/or unjustifiable risk of causing harm to Sasha (a member of a protected class) for engaging in constitutionally protected conduct.

58.     As a direct result of the Defendants Grzybowsky, Darrah, Foehl and Patrick's above-described unlawful and/or wrongful conduct, committed under the color of state law,

Sasha suffered harm in violation of her rights under the laws of the Constitution of the United States, in particular, the Fourth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

59.     Sasha was a victim of unreasonable and/or unlawful seizure and/or detainment at the dormitory shared with Brennan and Fox, which necessarily involved close contact between Brennan, Fox and Sasha, including while other students, faculty, and/or supervisors were not present. The conduct of Defendants Grzybowsky, Darrah, Foehl and Patrick prohibited Sasha from immediately transferring to an emergency dorm room and discouraged Sasha from asking twice.

60.     Defendants Grzybowsky, Darrah, Foehl and Patrick's conduct unfairly hindered Sasha's liberty by placing in effect a mutually applicable NCO in light of Sasha being targeted for her religious observance. Administering an NCO that negatively impacted Sasha, that would be violated inevitably and that was used as an instrument to retaliate against a victim of criminal hate was unreasonable, grossly excessive and deprived Sasha of her rights under the laws of the Constitution of the United States, in particular, the Fourth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

61.     Defendants Grzybowsky, Darrah, Foehl and Patrick subjected Sasha to depravations of her rights herein unreasonably and with reckless disregard for whether Sasha's constitutionally protected rights would be violated by Defendants actions and/or inaction which amounted to conduct shocking the conscience.

62.     As a direct and proximate result of the acts and omissions of Defendants Grzybowsky, Darrah, Foehl and Patrick, Sasha suffered severe emotional anguish, was forced to fear for her safety, and was wrongfully deprived of her physical liberty.

63.     As a direct and proximate result of Defendants Grzybowsky, Darrah, Foehl and Patrick's conduct, Plaintiff Sasha suffered substantial harm as set forth above, plus the cost of suit.

WHEREFORE, Plaintiff demands judgment against each Defendant as to each count, individually, jointly, and severally, in a sum in excess of One Hundred and Fifty Thousand Dollars ($150,000), plus punitive damages, interest, costs, attorney's fees, and such other and future relief as the Court may deem just and proper.


**COUNT IV**
**CIVIL RIGHTS: STATE CREATED DANGER**
**(14th Amendment, Substantive Due Process)**
**<u>Plaintiff vs. All Defendants</u>**

64.     All previous paragraphs are hereby incorporated by reference as through fully set forth herein.

65.     At all relevant times, Defendants Grzybowsky, Darrah, Foehl and Patrick knew and/or should have known that Brennan and Fox were discriminating against Sasha for being Jewish and thus presented an extreme risk of emotional harm and danger to Sasha.

66.     At all relevant times, Defendants Grzybowsky, Darrah, Foehl and Patrick knew and/or should have known that Sasha would be at extreme risk for emotional harm and danger if Defendants actively and affirmatively provided incomplete and/or inaccurate information and/or recommendations regarding the discriminatory student conduct that targeted Sasha and members of her protected class.

67.     The harm caused by Brennan and Fox's conduct, namely the damages and mental anguish as described above, was a foreseeable and fairly direct result of All Defendants actions and/or inaction.

68.     At all relevant times, All Defendants were state actors under the color of state law.

69.     At all relevant times, Sasha's Judaism and known status as the victim of discriminatory student conduct created a special relationship that existed between Sasha and All Defendants—All Defendants knew or should have known that Sasha was a member of a discreet class of persons subjected to the actual and potential harm brought about by All Defendants, as opposed to being a member of the public in general.

70.     Defendants Temple University, Board of Trustees, and Campus Safety, by and through but not limited to its administrators, faculty and/or individual staff members, acting under color of state law, affirmatively exercised its authority in a manner that created a danger to Sasha, and/or used its authority in a way that rendered Sasha more vulnerable to danger than had Defendants Temple University, Board of Trustees and/or Campus Safety not acted at all. Such conduct included:

        a.      Placing in effect a No Contact Order mutually against Sasha, despite her being targeted for constitutionally protected conduct;

        b.      Placing in effect a No Contact Order mutually against Sasha, despite the risk that said No Contact Order would be used as an instrument for retaliation by the accused;

        c.      Affirmatively recommending that no initial transfer be granted for placement in an emergency dorm room, despite the record of ongoing discriminatory attacks and risk of additional discriminatory conduct;

        d.      Concealing the discriminatory nature of the student conduct at issue from appropriate departments;

      e.      Effectively placing Sasha in the presence of Brennan and Fox via transfer to the same floor of a shared dormitory, despite notice of ongoing discriminatory conduct;

      f.      Prematurely placing in effect a No Contact Order mutually against the victim of a hate crime; and

      h.      Providing incomplete and/or inaccurate information to other appropriate departments meant to remedy and/or address discriminatory incidents.

71.      The aforementioned affirmative conduct created and/or increased Sasha's vulnerability to the dangers posed by Brennan and Fox.

72.      Sasha was a member of a limited and specifically definable group and Sasha was targeted due to her membership within said group.

73.      All Defendants' conduct placed Sasha at substantial risk of serious, immediate and proximate harm.

74.      The risk to Sasha because of her religious faith was obvious and known.

75.      The conduct of All Defendants when viewed in total was conscience shocking.

76.      The aforementioned affirmative conduct of All Defendants violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, remediable through 42 U.S.C. § 1983.

77.      The aforementioned affirmative conduct of All Defendants deprived Plaintiff Sasha Westrick of her fundamental rights, as secured by the 14th Amendment of the constitution of the United States of America without any compelling state interest.

78.      As a direct and proximate result of the violations of her civil rights, Plaintiff Sasha Westrick was caused to suffer economic and non-economic damages including but not

limited to discrimination, humiliation and embarrassment, severe mental anguish and loss of scholarship opportunities.

WHEREFORE, Plaintiff demands judgment against each Defendant as to each count, individually, jointly, and severally, in a sum in excess of One Hundred and Fifty Thousand Dollars ($150,000), plus punitive damages, interest, costs, attorney's fees, and such other and future relief as the Court may deem just and proper.

**COUNT V**
**CIVIL RIGHTS – SUPERVISORY LIABILITY**
**(4th and 14th Amendment, Substantive Due Process)**
**Plaintiff vs. Defendants Temple University, Dr. Jason Wingard, Board of Trustees and**
**Campus Safety**

79.    All previous paragraphs are hereby incorporated by reference as though fully set forth herein.

80.    At all relevant times, Defendants Temple University, Dr. Jason Wingard, Board of Trustees and Campus Safety were acting under color of state law.

81.    At all relevant times, Defendants Temple University, Dr. Jason Wingard, Board of Trustees, and/or Campus Safety exercised supervisory authority over Defendants Patrick, Foehl, Darrah, Grzybowsky, Woltemate and others.

82.    At all relevant times, Defendants Temple University, Dr. Jason Wingard, Board of Trustees and/or Campus Safety directed and/or acquiesced to the conduct of those over whom they exercised supervisory authority, conduct that included, without limitation, the following:

a.    Providing assessments and/or reports indicating that the shared dormitory was a safe place for Sasha, despite the unrestricted, inevitable presence of Brennan and Fox;

       b.      Placing inaccurate and/or incomplete information in student conduct reports and/or records;

       c.      Affirmatively placing in effect No Contact Orders mutually against the victim of a hate crime;

       d.      Concealing the discriminatory nature of the student conduct being investigated;

       e.      Effectively placing Sasha in the presence of Brennan, despite finding Brennan guilty of discriminatory conduct at a SCCS disciplinary hearing;

       f.      Prematurely placing in effect No Contact Orders mutually against the victim of a hate crime; and

       g.      Communicating incomplete and/or inaccurate information to other Defendants within the appropriate university departments.

82.    At all relevant times, Defendants Temple University, Dr. Jason Wingard, Board of Trustees and/or Campus Safety were aware of their subordinates' taking the above-described action and directed them to take such conduct and/or acquiesced to their conduct.

83.    At all relevant times, Defendants Temple University, Dr. Jason Wingard, Board of Trustees and Campus Safety knew or should have known that their directions and/or acquiescence to the conduct of those over whom they exercised supervisory control would have the effect of depriving Sasha of her rights under the laws of the Constitution of the United States, in particular, the Fourth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

84.    As a direct and proximate result of the violations of her civil rights, Sasha was caused to suffer emotional and economic harm as set forth above.

WHEREFORE, Plaintiff demands judgment against each Defendant as to each count, individually, jointly, and severally, in a sum in excess of One Hundred and Fifty Thousand Dollars ($150,000), plus punitive damages, interest, costs, attorney's fees, and such other and future relief as the Court may deem just and proper.

**COUNT VI**
**NEGLIGENCE**
**<u>Plaintiff vs. Defendants Grzybowsky, Darrah, Foehl and Patrick</u>**

85.    All previous paragraphs are hereby incorporated by reference as though fully set forth herein.

86.    At all relevant times, the negligence and recklessness of Defendants Grzybowsky, Darrah, Foehl and Patrick consisted, *inter alia*, of the following:

a.    Failing to recognize and understand the retaliatory danger posed by effecting and/or recommending to file No Contact Orders against Sasha;

b.    Failing to properly implement the appropriate policies, practices and/or procedures, including but not limited to policies, practices and/or procedures which relate to the investigation, evaluation and/or documentation of discriminatory student conduct;

c.    Failing to properly train supervisors, administrators and/or other faculty to properly and adequately oversee the activities of staff investigating, evaluating and/or documenting discriminatory student conduct; and

d.    Failing to have and enforce clear, concise and/or appropriate policies and/or directives to address the handling of alleged discriminatory student conduct.

WHEREFORE, Plaintiff demands judgment against Defendant as to each count, individually, jointly and severally, in a sum in excess of One Hundred and Fifty Thousand

Dollars ($150,000), plus punitive damages, interest, costs, attorney's fees, and such other and future relief as the Court may deem just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury as to each Defendant and as to each count.

**LAW OFFICES OF ROBERT B. MOZENTER**

Dated: _____4/26/2022_____

_____/s/Robert B. Mozenter_____
By: Robert B. Mozenter, Esquire
200 South Broad St., Suite 400
Philadelphia, PA 19102
(215) 985-4280
r.mozenter@verizon.net
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

---

**LAW OFFICES OF ROBERT B. MOZENTER**
**Robert B. Mozenter, Esq.**                    **ATTORNEY FOR PLAINTIFF**
200 S. Broad St., Suite 400
Philadelphia, PA 19102
(215) 985-4280
r.mozenter@verizon.net

---

## <u>CERTIFICATE OF SERVICE</u>

    I, ***ROBERT B. MOZENTER, ESQUIRE***, herby certify that a true and correct copy of

the Plaintiff's Complaint was served by ECF on counsel to all represented parties and served by

first class United States mail, postage prepaid on the following parties:


**Temple University,**

**Commonwealth of Pennsylvania,**

**Temple Board of Trustees,**

**Dr. Jason Wingard,**

**Megan M. Patrick,**

**Sandra Foehl,**

**Edward Darrah,**

**Rebecca Grzybowsky,**

**Temple University Campus Safety, and**

**Edward Woltemate**


                                                      /s/Robert B. Mozenter
                                         ***ROBERT B. MOZENTER, ESQUIRE***


**DATED:** _____4/26/2022_____